# Wilson, Appellant, *v.* Blaine et al.

*Equity—Jurisdiction—Taxpayer's bill—Municipalities—Issue of bonds — Election — Alleged invalid election — Collateral review of other court proceedings—Bill for injunction—Refusal of injunction.*

1. Courts of equity in this State have no jurisdiction save that expressly conferred upon them.

2. There is no jurisdiction in equity to contest the result of an election held to determine whether or not the debt of a municipality may be increased.

3. Equity will not restrain the issuance of bonds by a municipality, after the election court has certified that the electors have assented to an increase of the debt, for any reason which relates simply to the conduct of the election.

4. In statutory proceedings, not in accordance with the course of common law, no right can be exercised save such as is given by the statute.

5. As the Act of April 20, 1874, P. L. 65, provides no method for contesting the result of an election on the question of an increase of a municipality's indebtedness, there can be no contest thereof.

6. The judgments and decrees of the courts in such proceedings cannot be collaterally reviewed by proceedings in equity.

7. A bill filed by a taxpayer in his own name and right, and not on behalf of himself and other taxpayers, is not a taxpayer's bill, and no relief can be granted thereunder regarding matters in which all the taxpayers generally are interested.

Argued May 29, 1918; reargued July 16, 1918. Appeal, No. 359, Jan. T., 1917, by plaintiff, from decree of C. P. Luzerne Co., Jan. T., 1917, No. 3, dismissing bill

in equity for an injunction, in case of John Wilson v. Daniel Blaine et al. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ., on reargument. Affirmed.

Bill in equity for an injunction. Before STRAUSS, J. The opinion of the Supreme Court states the facts. The court dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and conclusions of law and the decree of the court.

*W. Alfred Valentine,* for appellant.

*Arthur H. James,* with him *James T. Brennan* and *Richard B. Sheridan,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, October 7, 1918:

On November 7, 1916, an election was held in the Borough of Larksville, for the purpose of obtaining the assent of the electors to an increase of its debt. The election court computed the return of votes, and certified that 561 votes had been cast in favor of the increase and 533 against it. The borough council thereupon proceeded to take the necessary steps to make the increase, and to issue the appropriate bonds to secure it. Thereupon appellant, alleging that he was a citizen and taxpayer of the borough, filed this bill in equity in his own name and on his own behalf, and not in the name and on the behalf of himself and other citizens and taxpayers, against the borough councilmen, the burgess, the controller of the borough and the secretary of the borough council, praying an injunction against the issuing, signing or approving of said bonds.

It is averred in the bill that in two of the wards the voting places were not arranged and equipped as required by law; that persons other than election officers and the electors voting were allowed to remain in and

about the election rooms; that assistance was rendered to voters in marking their ballots, although they were not really disabled or incapacitated from so doing; and that numerous persons were allowed to vote in favor of the loan who were not qualified electors of the ward in which they voted. No fraud is alleged, nor is it averred that any steps were taken, at the time of computing the vote or thereafter, to challenge the court, or to directly attack the finding and certificate of the election court that a majority of the electors had approved the increase. Pending the decision of the case the validating Act of May 29, 1917, P. L. 308, was passed.

The court below held that as to all matters other than those which relates to the arrangement and equipment of the polling places, the evidence was too indefinite, and the matters involved too unimportant, to justify findings in regard thereto. Its conclusion on those points is not challenged by any exception or assignment of error. It further decided that equity had jurisdiction of the case; that under Cramer's Election Case, 248 Pa. 208, the arrangement and equipment of the polling places in those wards were so bad as to have required the votes cast therein to be excluded in the count, but for the validating Act of May 29, 1917, P. L. 308, which, under Swartz v. Carlisle Boro., 237 Pa. 473, must be held effective to sustain the election. It thereupon dismissed the bill. Plaintiff now appeals, alleging that act to be unconstitutional because local and special legislation, and, if applied to this case, which was pending at the time of its passage, it would be unconstitutional for that reason also. We do not deem it necessary to consider those questions, as we are of opinion that the bill should be dismissed for want of equity.

By various provisions in the Constitution of this State the elections of public officials are provided for, and, by Art. VIII, Sec. 17, the different classes thereof are stated, and as to them it is directed that "the General Assembly shall, by general law, designate the courts and

judges by whom the several classes of election contests shall be tried, and regulate the manner of trial and all matters incident thereto." And by Art. IX, Sec. 8, it provides that "the debt of any county, city, borough, township, school district or other municipality or incorporated district" shall not be increased beyond a certain point "without the assent of the electors thereof at a public election, in such manner as shall be provided by law." This latter kind of election was theretofore unknown in this State.

At the first session of the legislature following the adoption of that Constitution, the following acts were passed: Act of January 30, 1874, P. L. 31, providing for the election of public officials; Act of May 19, 1874, P. L. 208, providing for the contest of such elections; and Act of April 20, 1874, P. L. 65, regulating the manner and effect of voting on the increase of debt. By the last cited act it is provided that the clerk of the court counting the vote "shall make a record of the same, and furnish a certified copy thereof, under seal, showing the result, to the corporate authorities of such municipality"; and if "the return of such election shall show a majority voting that 'debt may be increased,' the corporate authorities of the municipality may increase the same."

Neither the last mentioned act, nor any other act of assembly or constitutional provision, provides any method for contesting the result of such an election. Hence, as the Constitution and the legislation provided for contests of elections of public officials, and not of elections relating to an increase of debt, it must be presumed that it was not intended that the return and certification of the result in the latter class of cases, should be controverted in any way; and this is borne out by the provision above quoted that if the return shows a right to increase the debt the authorities may do it. It is also in keeping with the general rule that in matters not in accordance with the course of the common law, no right

can be exercised save such as is expressly given by the statute relating thereto: Moyer v. Kirby, 14 S. & R. 162, 164-5. What has been said above is in accord with the dicta in Hulseman v. Rems, 41 Pa. 396, and the decision in Thompson v. Ewing, 1 Brewster 67, that equity has no jurisdiction in this class of cases, and is conclusive against appellant's contention. Inasmuch, however, as he builds his argument wholly upon the fact above stated, that no right of contest is given in the case of elections to increase a municipality's debt, it may be well to examine his contention a little further.

Apparently it is thought that, because equity has no jurisdiction when there is an adequate remedy at law, therefore where there is no adequate remedy at law there must be jurisdiction in equity. Of course in proper cases, if an individual is wronged, and the law does not provide him with a remedy, equity would take cognizance of the wrong and redress it; but that does not mean, as appellant necessarily contends, that where a tribunal is provided to do a given thing, equity will have jurisdiction to collaterally review its decisions, if there is no method provided by statute for so doing. On the contrary, especially in those matters in which the public has an interest, in the absence of a constitutional provision on the point, its judgments can only be reviewed in the manner and to the extent provided in the statute itself. A multitude of cases so decide, as witness the decisions on liquor license cases, and those arising under the Public Service Company Law, in the latter of which, two cases, recently reported, are squarely in point: McCauley v. Imperial Woolen Company, 261 Pa. 312, and Leiper v. Baltimore & Philadelphia Railroad Company, 262 Pa. 328. The unsoundness of appellant's contention is, moreover, demonstrable from another point of view.

In this State, courts of equity did not exist until 1836, and it has been steadily held that they have no jurisdiction save that given by statute: Davis v. Gerhard, 5 Wharton 466; Hogsett v. Thompson, 258 Pa. 85. No

other conclusion was or is possible under Art. V, Sec. 6, of the Constitution of 1838, or Art. V, Sec. 20, of the Constitution of 1873. He who asserts the jurisdiction must, therefore, point to the statute giving it. In this case it cannot rest upon the ground of fraud, for no fraud is alleged; and not being alleged it could not be considered, even if proved: Luther v. Luther, 216 Pa. 1. Nor if it were alleged would it be available to appellant as a means of collateral attack in this class of cases: Com. v. Leech, 44 Pa. 332. Happily here it was not even attempted to be proved.

Appellant points, however, as the sole basis of his claim that equity has jurisdiction, to Sec. 13 of the Act of June 16, 1836, P. L. 784, as amended by Sec. 39, of the Act of June 13, 1840, P. L. 666. It provides for equitable jurisdiction so far as relates to "the prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community or the rights of individuals." If those words were successfully given the broad construction often claimed for them by counsel, they would result in drawing into the jurisdiction of equity much of the civil and criminal litigation of the State, and would violate the provisions of Sec. 6, Art. IX, of the Constitution of 1838, and Sec. 6 of Art. I, of the Constitution of 1873 providing that "Trial by jury shall be as heretofore, and the right thereof remain inviolate." It is for that reason that the courts have invariably limited the act to matters within its purpose and spirit.

Moreover, that provision has no applicability to this case. What "acts contrary to law" are here sought to be restrained? Appellant says the issuance of the bonds. But that is not so; for the issuance of the bonds, on the faith of the recorded decree of authority so to do, is a valid act. The thing really alleged to be "contrary to law" was the holding of an election in places not equipped as provided by law. To reach that matter, however, the application should have been to restrain the voting

in, or the counting of the votes cast at, those places; but no injunction was asked upon either ground, and, in the nature of things, cannot now be.

Nor if we passed that point would appellant be any better off. "Acts contrary to law" which are "prejudicial to the interests of the community," can only be restrained upon application by and in the name of the community prejudiced: Sparhawk v. Union Passenger Railway Co., 54 Pa. 401. And "acts contrary to law," which are "prejudicial to......the rights of individuals," can only be restrained at the instance of individuals who have interests which are different in kind as well as in degree from those of the rest of the public affected: Rhymer v. Fretz, 206 Pa. 230; Alexander v. Wilkes-Barre Anthracite Coal Co., 254 Pa. 1. In this case appellant's interest is the same both in kind and degree as that of all other citizens and taxpayers of the borough. It follows that the above act of assembly lends no aid to appellant's claim of equitable jurisdiction; and, as no other statutory authority appears, the bill must be dismissed.

Lest it be thought that the matter was overlooked, we add that nothing above said affects the right to file a taxpayer's bill in proper cases. We said in Schlanger v. West Berwick Borough, 261 Pa. 605, that such a bill is essentially a class bill. As such it must be filed in the name of and for the class: 37 Cyc. 1273, 4; for otherwise every taxpayer would have a separate right to file a bill in his own name and right, and a multiplicity of suits and great confusion might result. This bill, however, is not a class bill. Appellant files it in his own name and right, and does not aver that it is filed for the benefit of himself and other citizens and taxpayers.

The decree is affirmed and the appeal dismissed at the cost of appellant.