## C. M. PATTEN & CO. (WILDER, Intervener) v. UNITED STATES.*

### No. 6927.

Circuit Court of Appeals, Ninth Circuit.

Nov. 28, 1932.

*Rehearing denied January 9, 1933.

Frank P. Doherty and William R. Gallagher, both of Los Angeles, Cal., for appellants.

Samuel W. McNabb, U. S. Atty., and Sharpless Walker, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

The United States seeks to appropriate, under the power of eminent domain, about four hundred feet of nineteen hundred and fifteen feet of the public plaza of the city of Los Angeles, as a site for a post office and custom house. The plaza, being a part of the Palos Verde Rancho, was dedicated to the public use in 1882. Numerous defendants, consisting of persons as heirs and successors of the owners of the rancho and parties who claimed an interest in the property across the street from the plaza, as well as the city, and board of park commissioners of the city of Los Angeles, were named in the action. All of those named, with the exception of C. M. Patten & Co., defendant, and Grace M. Wilder, intervener, either defaulted or appeared and consented to a decree in favor of plaintiff.

At the commencement of the trial it was stipulated that the appellants admitted all of the allegations of the complaint, excepting the allegations contained in paragraph 15 thereof, which are, in substance: That the proposed public use of the land for the post office and custom house is a more necessary public use than its present public use as a part of the public plaza, and that the proposed public use of a portion of the plaza as a site for the post office and custom house will be consistent with the present and future use of the remainder of the tract and will not impair or interfere with the public use of the remainder of the plaza.

Under this stipulation the United States asserts: First, that it has paramount authority under its power of eminent domain to condemn any property subject to its sovereignty, for any public use necessary for and incident to its governmental functions, and that there is no restriction placed on such right, although the land to be condemned has been devoted to a public use; and, second, that the appellants have not alleged or proved any interest in the plaza site, or sustained any special damage, or injury suffered, different in kind and degree from that alleged to be suffered by other taxpayers, or the public generally.

The Secretary of the Treasury is authorized to procure under the federal statutes, by condemnation proceedings, real estate for the erection of public buildings. 25 Stat. 357 (40 USCA §§ 257, 258). Special statutes were enacted authorizing the Secretary of the Treasury to acquire a site for a post office and custom house at San Pedro. 45 Stat. 162, 177. The state of California has also granted to the United States the right of eminent domain for all public uses authorized by the government of the United States. Section 1238 of the Code of Civil Procedure of California. And the facts required by the state statute are that the use to which it is to be applied is a necessary one and authorized by law, and, "if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use. * * *" Section 1241 of the Code of Civil Procedure of California.

While the Charter of the City of Los Angeles and the ordinances of San Pedro provide that property set apart in the city for use for public park purposes shall remain as such, yet section 1238 of the Code of Civil Procedure of California, enacted in 1872, in force at the time the charter was adopted, specifically grants to the United States the right of eminent domain in acquiring property for all public uses authorized by the government of the United States. The provisions of the City Charter merely prohibit the city from using the land in the plaza for any other use than that to which it was dedicated, but it does not place any limitation upon the government to condemn it for public uses which are within the constitutional reservations of the general government. The Supreme Court of the United States has recognized that whenever lands in any state are needed by the United States for a post office and custom house, or any other public purpose, Congress exercising the right of eminent domain, and making just compensation therefor, has the power to take land devoted to one public use, for another and different public use. United States v. Gettysburg Elec. R. Co., 160 U. S. 668, 16 S. Ct. 427, 40 L. Ed. 576. In the case of United States v. City of Tiffin (C. C.) 190 F. 279, 280, which involved a public alley of the city, the city contested the right of the United States to condemn, upon the ground that the land sought to be condemned was already dedicated to a public use. In disposing of

the objection of the city, the court said: "The United States has paramount authority in the matter of taking any property within its borders for those public uses which are within the constitutional reservations to the general government. Its rights in this behalf are inherent in its sovereignty, and are prior to constitutions and statutes. The Constitution does not operate to create this right, but only to limit its exercise to certain objects. The several states for their own administrative purposes within their own borders hold authority of the same generally broad and extraconstitutional nature. The principle of strict construction of either the nature or extent of this right applies to neither sovereignty for the reason that such right is a very part of the sovereignty itself, existing from the beginning. This does not mean, however, that no power may intervene to prevent arbitrary action, for such power certainly abides with the courts." See, also, Chappell v. United States, 160 U. S. 499, 16 S. Ct. 397, 40 L. Ed. 510; Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449; Louisville & N. R. Co. v. Cincinnati, 76 Ohio St. 481, 81 N. E. 983; 18 A. L. R. 1271.

However, this right of the federal government to condemn is subject to the power of the courts to intervene and prevent arbitrary and unnecessary action, which must be determined by the facts in each particular case. The case of Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, 11 Ann. Cas. 465, and others decided by the Supreme Court of California, and where the government was not a party, merely holds that a municipality may not use a public park for any other purpose which would be inconsistent with the use of the property for park purposes. The question as to the right of the federal government to condemn property was not involved in any of those cases.

Recognizing therefore the principle thus stated and applying it to the facts in the present case, we then turn to the evidence to ascertain whether the government has acted arbitrarily and unnecessarily in proceeding to condemn the site involved. The construction of the post office and custom house seems necessary for governmental purposes in providing a post office and custom house where the government can transact governmental business with the general public, and the site involved possesses special and superior advantages as regards the government departments and the general public which no other available site affords, as it is surrounded on three sides by public streets and on one side

by a public park, and is a conspicuous site along the harbor channel in full view and touch with the harbor activities, enabling those concerned with government inspection of other governmental departments to gain prompt and convenient access to the federal building, such as immigration, quarantine, steamboat inspection, and customs. It is nearer the railway passenger station, street car and interurban lines, and the close railway tracks paralleling the plaza affords opportunity for the installation of a conveyor system by means of a subway and tunnel to transfer the mails to and from the railway mail cars and the post office, which is a saving in time and expense. There appear other advantages near the seat of operation which the site has in the way of location as regards both governmental departments and the general public which are more necessary and a greater public use than a small part of a plaza. This conclusion was reached by the trial court and is sustained by the weight of the evidence.

■■ As to the second question presented, which relates to the objection of the government that the appellants have not any interest in the plaza site, or will sustain any special damage or injury different in kind and degree from that of other taxpayers or the public generally, we find from the record that the intervener, Grace M. Wilder is a resident and taxpayer in Los Angeles. The defendant Patten & Co. does not allege in its answer that it is either the owner or taxpayer of any property in the city, but proof was offered, over the government's objection, that it was. The objection should be sustained for the reason that the defendant did not claim in its answer to be an owner of property, or taxpayer in the city. It, therefore, is in no position to object to the site being condemned. This leaves the only answer to be considered, of intervener Grace M. Wilder, who alleges only that she is a taxpayer in the city. It does not appear that she would suffer any damage or injury different in kind and degree from that to be suffered by other taxpayers. The inquiry then is whether a taxpayer at large of a municipality having no private interest in the question, more than other taxpayers can prevent the appropriation of a site for public purposes by condemnation proceedings. The principle generally recognized by the courts that one can only obtain relief where it is shown that he has suffered special damages, or injury different and distinguishable from his injury as a member of the public at large, is applicable here

under the record, and therefore the appellants have no right to prevent the government from acquiring the site in this proceeding. Armbruster v. City of Wildwood (D. C.) 41 F.(2d) 823; Tifft v. City of Buffalo, 65 Barb. (N. Y.) 460; Wilson v. Blaine, 262 Pa. 367, 105 A. 555; Dyer v. City of Philadelphia, 276 Pa. 348, 120 A. 416; Bayard v. Bancroft (Del. Ch.) 62 A. 6; Antonakas v. Anderson Chamber of Commerce, 130 S. C. 215, 126 S. E. 35.

It is urged by appellants that the trial court should not have allowed the plaintiff to amend its complaint so as to recite that the plaza was maintained as a "public plaza" instead of as a "public park or plaza" to conform to the proof. The allowance of the amendment, which was within the discretion of the trial court, merely made the complaint conform to the proof and was not prejudicial to the rights of appellants, as they do not contend that they were taken by surprise. And further that the costs should have been awarded against the United States. The rule in that regard is that costs are not allowed against the United States unless authorized by Congress. No such authorization is given in a condemnation proceeding. In re Post Office Site in Borough of the Bronx (C. C. A.) 210 F. 832; United States v. Wade (D. C.) 40 F.(2d) 745; United States v. Knowles' Estate (C. C. A.) 58 F.(2d) 718.

The judgment is affirmed.