# Ward, Appellant, *v.* Bethlehem City Area School District.

Argued October 1, 1964.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*E. Jerome Brose*, with him *Danser, Brose & Poswistilo*, for appellants.

*Walter W. Shearer*, with him *Ralph W. Barthold, F. Eugene Reader*, and *Rhoads, Sinon & Reader*, for school district, appellee.

OPINION BY MR. JUSTICE COHEN, January 5, 1965:

This is an appeal from the order of the lower court sustaining preliminary objections to plaintiffs' complaint in equity and dismissing that complaint for want of jurisdiction.

On March 25, 1963 the School Directors of the Bethlehem City Area School District, a union district, adopted a resolution signifying a desire to increase its debt by $8,000,000. The amended "Public School Code of 1949" and the amended "Municipal Borrowing Law" both provide that such an increase must be approved by the electors in the school district. Act of March 10, 1949, P. L. 30, §632, as amended, 1961, February 28, P. L. 57, §1, 24 P.S. §6-632, Act of June 25, 1941, P. L. 159, §203(b), as amended, 1961, February 28, P. L. 59, §1, 53 P.S. §6203(b). Accordingly, the proposed increase was submitted to the electors of this union district at a public election held on May 21, 1963.

On the same date, May 21, 1963, the electors of this union district and the electors of the Hanover

Township School District voted, pursuant to the "Public School Code of 1949," on the question of whether or not the former district should be enlarged to include the latter. Act of March 10, 1949, P. L. 30, §251, as amended, 1959, December 30, P. L. 2088, §1, 24 P.S. §2-251.

Both questions were resolved affirmatively. A majority of the electors of the union district authorized an increase of the debt. Also, a majority of the electors of the union district and a majority of the electors of the Hanover Township School District voted that the former should be enlarged to include the latter.

On September 16, 1963, the Board of School Directors of the Bethlehem City Area School District (then including what had theretofore been the Hanover Township School District) adopted a resolution to advertise for sale general obligation bonds based upon the electoral vote of May 21, 1963. On October 14, 1963, plaintiffs, taxpayers of Bethlehem and Hanover Townships, filed a complaint in equity in the Court of Common Pleas of Northampton County against the Bethlehem City Area School District seeking a decree that the proposed sale and issuance of the bonds was invalid and an injunction against the defendant, its agents, etc. to restrain the issuance, sale, etc. of the bonds. The ground of the complaint was that the debt increase represented by the proposed bonds could not be incurred without approval of the electors of the defendant district, pursuant to the statutes cited in the second paragraph of this opinion, and such approval had never been obtained.

Defendant filed a preliminary objection to the complaint raising a question of the lower court's jurisdiction in the matter. The theory of the objection is that plaintiffs' complaint contests the validity of the May 21, 1963 election in which a majority of the electors

of the former union school district of the Bethlehem City Area authorized the debt increase, pursuant to which election the proposed bonds are to be issued. Jurisdiction over such a contest, defendant argues, has been placed by statute exclusively in the court of quarter sessions. The statute cited for this proposition is §205 of the "Municipal Borrowing Law" which provides, inter alia: ". . . Any interested party or any taxpayer may contest the validity of any election proceedings under this section 205 by filing, within sixty (60) days from the date of the election and not thereafter, a petition in the court of quarter sessions of the county wherein the municipality is located, specifically alleging the error or errors complained of in the proceedings, in the manner required of bills in equity, and the appellant shall have the burden of proof: Provided, however, That if the proceedings required by Article III of this act have been approved by the Department of Internal Affairs, such petition shall be filed in the Court of Common Pleas of Dauphin County. When any election has been held to obtain the assent of the electors of any municipality under this section 205 and no such petition has been filed within said period of sixty (60) days from the date of the election, or such petition having been filed shall have been finally dismissed, such election shall be conclusively deemed to be valid for all purposes, except where a constitutional question is involved." 1941, June 25, P. L. 159, §205(g); 1943, May 21, P. L. 500, §1; 1951, June 29, P. L. 949, §§1, 2, 53 P.S. §6205(g).

Plaintiffs have admitted that there was an election on May 21, 1963 in which the electors of the Bethlehem City Area School District, as it existed before the joinder of Hanover Township School District, authorized a debt increase. Those plaintiffs who were not then residents of the Bethlehem City Area School

District do not contend that they had any right to participate in that election. Nor do any of the plaintiffs contend that the manner in which that election was conducted was invalid. Rather, their answer to the preliminary objection is that there was no election which could support the proposed bond issuance by the Bethlehem City Area School District as it exists now, i.e., including Hanover Township School District, because there was no election in which the electors of Hanover Township School District had an opportunity to vote on the matter. Such an election, they contend, is required by the amended "Public School Code of 1949" which provides that "the assent of the electors shall be required in all school districts of the second, third, and fourth class, to issue bonds which will incur any new debt or increase the indebtedness. . . ."

The lower court sustained the preliminary objection and dismissed the complaint on the ground that plaintiffs were contesting the validity of the May 21, 1963 election and jurisdiction over such a contest was, by statute, exclusively vested in the court of quarter sessions. We think the lower court erred.

The jurisdictional problem raised by this case cannot be disposed of on the basis of the conundrum that is created by the question: "Are the plaintiffs attacking the validity of the election that was held or are they attacking the proposed issuance of the bonds because legislatively required election was not held?" Instead, the decision must rest on ascertaining the nature of the dispositive questions raised by the plaintiffs' complaint and determining whether these questions are of the type that the legislature intended should be confined to the court of quarter sessions when it enacted the statute interposed by defendant's preliminary objection. We proceed now to note some

of the questions that appear to have been raised by plaintiffs' complaint.

Before reaching the conclusion that plaintiffs were contesting the validity of the May 21, 1963 election, the lower court thought it necessary to consider the meaning and applicability in the present context of the Act of March 10, 1949, P. L. 30, §254 which provides: "Whenever any two or more school districts shall be consolidated into a union school district, as herein provided, all debts and liabilities of the several districts shall become the debts of the union school district. . . ."

Evidently, the lower court thought the applicability of this statute was necessary to validate the proposed bond issuance because, admittedly, there was no authorizing election subsequent to the consolidation. In turn, the applicability of this statute, in the lower court's opinion, depended on a further question—whether, within the meaning of the statute, a "debt" of the former Bethlehem Area District existed prior to the consolidation with the Hanover District. This, in turn, raised the question of when the "consolidation," within the meaning of this statute, took place. The latter question apparently further involved the interpretation of those sections of the "Public School Code of 1949" providing for the joining of school districts. Act of March 10, 1949, P. L. 30, §§251-253, as amended, 24 P.S. §§2-251-253. Of course, all of these questions raised subquestions. *Only after deciding all of these questions* did the lower court hold that plaintiffs "must" be attacking the validity of the May 21, 1963 election. Actually, the lower court was holding that if all of the questions were decided in the way it indicated the election of May 21, 1963 on the debt increase was all the electoral authorization that was needed for the proposed bond issuance. Further, in defendant's brief, we are confronted with ten pages

462

of argument involving these and related questions (including the constitutionality of the result for which defendant contends) which defendant deemed essential in order to demonstrate that "the *sole issue* presented by plaintiffs' action is validity of the election proceedings." (Emphasis supplied). Moreover, plaintiffs suggest in their brief that the "substantive question ultimately to be decided is, of course, whether it matters that the debt was authorized by one district and the bonds are to be issued by another . . . ." Finally, while we refrain from deciding any of these questions at this time, we think it opportune to note the peculiar situation in this case of the holding of the consolidation election on the same date as the debt increase election.

Having ascertained the nature of the questions which apparently are raised by plaintiffs' complaint, it is necessary to determine whether the legislature confined their resolution to the court of quarter sessions. The wording and context of the provision upon which defendant and the lower court rely do not support this conclusion. The pertinent language directs that: "Any interested party or any taxpayer may contest the validity of any election proceedings under this section 205 by filing . . . a petition in the court of quarter sessions . . . specifically alleging the error or errors complained of in the proceedings . . . ." Act of June 25, 1941, P. L. 159, §205(g), as amended, 1951, June 29, P. L. 949, §§1, 2, 53 P.S. §6205(g).

The "proceedings" regulated by §205 are the time, method, and content of the election notice, the time for holding the election, and the rules governing the conduct of the election. Manifestly, it would be impossible for plaintiffs to file a petition specifically alleging the error or errors complained of in the "proceedings" because they are not complaining of such errors. Instead, their complaint is that the new or

enlarged school district of the Bethlehem area (i.e., including Hanover Township) is proposing to issue bonds which bind the new or enlarged district and before it can do so it must hold an election in which the electors of the new or enlarged district may vote. Section 205 has nothing to say in this matter. Indeed, §205 only comes into operation "whenever the corporate authorities . . . desire to make a debt increase where the assent of the electors is required. . . ." It says nothing about *how to determine* "where the assent of the electors is required."

There is another reason, on the face of §205, why the legislature could not have intended that the questions raised by plaintiffs' complaint be confined to the court of quarter sessions. A petition under §205 must be filed within 60 days of the election being contested, otherwise "such election shall be conclusively deemed valid for all purposes, except where a constitutional question is involved." If the consolidation of the former Bethlehem City Area School District with the Hanover Township School District had taken place more than 60 days after the election in which the debt increase was authorized then, applying defendant's theory, plaintiffs *could not even raise the question* of whether a bond issue subsequent to the consolidation must be supported by an election held subsequent to consolidation. This conclusion must follow from defendant's argument that such a question involves the validity of the prior election and, as such, is foreclosed by the 60 day provision. The harshness of such a result underlines the weakness of the argument upon which it is based. Plaintiffs' theory of this case involves only incidentally the May 21, 1963 election to increase the debt, and the questions they raise are focused upon other statutory provisions having little to do with §205. We do not think that the legislature intended that section to confine plaintiffs' ques-

tions to the court of quarter sessions or in some completely unpredictable and fortuitous circumstances to foreclose them altogether.

Defendant's authorities do not support its argument that plaintiffs' exclusive remedy is in the court of quarter sessions. *Wilson v. Blaine,* 262 Pa. 367, 105 Atl. 555 (1918), stated most favorably to defendant, says only that at that time (before any statutory provision providing for contesting debt increase elections) equity had no jurisdiction over questions concerning the propriety of the *election proceedings.* The plaintiffs' complaint in that case involved matters such as the arrangement and equipping of voting places. *Parkin v. New Kensington Borough,* 262 Pa. 433, 105 Atl. 629 (1918), holds that a plaintiff aggrieved by an annexation ordinance purportedly passed pursuant to the Borough Code was confined to the court of quarter sessions. But the jurisdictional statute in that case directed: "Complaint may be made to the next court of quarter sessions . . . by any person aggrieved in consequence of any ordinance, regulation or act done or purporting to be done in virtue of this act. . . ." Id., 435. Manifestly, the jurisdictional provision relied upon by defendant in the case at bar is narrower than that in *Parkin. Whitney v. Jersey Shore Borough,* 266 Pa. 537, 109 Atl. 767 (1920) involves the same statute relied upon in *Parkin,* supra.

Having demonstrated that §205 does not confine plaintiffs to the court of quarter sessions, nevertheless it must also be shown that equity does have jurisdiction of defendant and the questions in this case. Equity's jurisdiction is regulated by the Act of June 16, 1836, P. L. 784, §13, which provides for jurisdiction, inter alia, "in such other cases as the said courts have heretofore possessed such jurisdiction, . . . under the Constitution and laws of this Commonwealth." This statute gives equity jurisdiction of cases such as

the present one, i.e., where the complaint alleges that the school directors or school district is threatening to do an illegal act and the questions raised have not been confined by the legislature to another forum. Cf. *Barth v. Philadelphia School District,* 393 Pa. 557, 143 A. 2d 909 (1958); *Wilds v. McKeesport City School District,* 336 Pa. 275, 9 A. 2d 338 (1939); *Wharton v. School Directors of Cass Township,* 42 Pa. 358 (1862).

Neither defendant nor the lower court has advanced any substantial argument for the deprivation of jurisdiction of equity in this case. However, we note that the record is insufficient to allow a determination of the impact of Article III of the "Municipal Borrowing Law" upon the jurisdiction of the Court of Common Pleas of Northampton County in this case. Act of June 25, 1941, P. L. 159, §§301-313, 53 P.S. §6301-6313, as amended.

The material questions were neither fully argued by the parties nor briefed by plaintiffs on appeal. Again, we note that we give no opinion at this time on these questions.

Accordingly, we vacate the order of the lower court dismissing plaintiffs' petition for want of jurisdiction and remand the case for such proceedings as are necessary.

Costs to be paid by appellee.

―――――

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view, the telling point in this case is that when a school district (School District of Hanover Township) joins with, or becomes incorporated into another (Bethlehem City Area), it necessarily assumes, with the remaining electors of the school district, the obligations of the new union district.

It is clearly, statutorily mandated that: "Whenever any two or more school districts shall be consolidated into a union school district, as herein provided, all

debts and liabilities of the several districts shall become debts of the union school district . . .".[1] As I view it, this statute applies where, as here, the indebtedness was approved on May 21, 1963, and the district became incorporated into the new union district on July 1, 1963.

On March 25, 1963, the Bethlehem City Area School District adopted by proper action a resolution to increase its debt, subject to electoral approval. On May 21, 1963, the electors of that district, at a regular primary election, approved the creation of the increased debt. At that election, too, the electors of that district, as well as the electors of the Hanover School District, voted to enlarge the district and to include Hanover. On July 1, 1963, Hanover became incorporated into the Bethlehem City Area School District. On September 16, 1963, the board of the union district (then including the former Hanover District) advertised for sale of the bonds authorized by the electoral vote on May 21, 1963. About a month later, appellants taxpayers filed this action in equity to restrain the sale and issuance of the bonds.

I agree with the trial court's holding that the validity of the May 21 election and of the indebtedness thereby created may only be contested in accordance with the provisions of the Municipal Borrowing Law[2] by proceeding in the court of quarter sessions within 60 days from the date of the May 21 election.

"The 60 day period expired on July 20, 1963. The electors of the School District of Hanover Township knew on May 21, 1963, after the votes were counted, their district would be incorporated into the Union [Bethlehem City Area] District on July 1, 1963. Since we cannot assume these electors existed in a news

---

[1] Act of March 10, 1949, P. L. 30, §254, 24 P.S. §2-254.

[2] Act of June 25, 1941, P. L. 159, §205(g), as amended, 53 P.S. §6205(g). Quoted in the majority opinion.

vacuum, they may safely be presumed to have known of the results of the election increasing the indebtedness in the Union District into which they were to be incorporated. They were, therefore, 'interested part-(ies)' as that term is used in subsection (g) in section 205 of the Municipal Borrowing Law above quoted. In any event, they were 'interested part(ies)' on July 1, 1963, when the School District of Hanover Township became incorporated into the Union School District and they had twenty days thereafter within which to proceed under . . . [§205(g)] of the Municipal Borrowing Law.

"While equity would have jurisdiction if the directors of defendant performed acts transcending the legal limits of their powers, or the limits of their legal discretion (13 P.L.E. 448, and cases cited), no such allegations are here made and plaintiffs are relegated to the statutory remedy provided in the Municipal Borrowing Law."[3] Because plaintiffs failed to follow their statutory remedy in this case, they should not be allowed to circumvent the statute by prevailing in this equity action.

The court below, in my judgment, adequately and correctly dealt with the applicable provisions of the School Code and the Municipal Borrowing Law, as well as the awareness of appellants of the results of the election of May 21, their standing as interested parties, the legal and statutory remedies available and the absence of any ground for equitable intervention.

The majority opinion, after discussing its impression of the questions presented by the litigants, proceeds to analyze the theory of the lower court's determination, offers its suggestion as to what it regards as the basic question, and then concludes: "Neither defendant nor the lower court has advanced any sub-

---

[3] From the opinion of the court below.

stantial argument for the deprivation of jurisdiction of equity in this case. However, we note that the record is insufficient to allow a determination of the impact of Article III of the 'Municipal Borrowing Law' upon the jurisdiction of the Court of Common Pleas of Northampton County in this case. . . .

"The material questions were neither fully argued by the parties nor briefed by plaintiffs on appeal. Again, we note that we give no opinion at this time on these questions.

"Accordingly, we vacate the order of the lower court dismissing plaintiffs' petition for want of jurisdiction and remand the case for such proceedings as are necessary."[4]

I am unable to find any support—factual, statutory, or decisional—for the conclusions of the majority. Nor are they, in any sense, decisional or helpful in so far as the determination of this controversy is concerned. Vacating the order below and remanding "the case for such proceedings as are necessary" furnishes neither guide nor direction to the trial court or to the litigants. I fail to see why and in what respect the present record is not wholly satisfactory, just as the court below, with agreement of the parties, determined it was.

I am at a loss to understand how the instant record will be improved by remand and further delay. The just, proper and expeditious determination of this dispute will not be aided nor advanced by remand "for such proceedings as are necessary"—particularly since the litigants have not suggested any necessity, nor has the majority spelled out or indicated what may be "necessary".

I dissent and would affirm the court below.

Mr. Chief Justice BELL joins in this opinion.

_____

[4] From the opinion of the majority.