535 A.2d 581

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee,**

**v.**

**Harold L. MITCHELL, individually, and Mark G. Shultz, individually, and Edward A. Cummins, individually, and Harold L. Mitchell, Mark G. Shultz, Edward A. Cummins, t/a Cummins Construction Company and/or Appalachian Pipeline, Inc.**

Appeal of Mark G. SHULTZ.

Supreme Court of Pennsylvania.

Submitted Sept. 23, 1987.

Decided Dec. 29, 1987.

Reargument Denied Feb. 29, 1988.

George Retos, Jr., Retos, Held & Mascara, Washington, for appellants.

Kenneth Lee Sable, Michael J. McCaney, Jr., Asst. Counsels, Kenneth B. Allen, Dept. of Transp., Harrisburg, for appellee.

Robert M. Keener, Sayers, King, Keener & Nalitz, Waynesburg, for Harold L. Mitchell.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice.

On October 19, 1978, Harold L. Mitchell, Mark G. Shultz, and Edward G. Cummins were named in a federal indictment for fraudulently obtaining state highway contracts. These three men, acting with one Stephen Koratich, formed a business entity, the Cummins Construction Company, to lease construction equipment to the Pennsylvania Department of Transportation, (hereinafter "the department"), Greene County Maintenance Office. Shultz, the appellant herein, was the Greene County Sheriff and the Democratic Chairman. He had the power to determine who would lease equipment to the department and who would be hired by the department. Mitchell worked in the department from 1971 until 1978. During this time, Mitchell personally approved and signed thirty-six rental agreements between the department and Cummins Construction Company, of which he was a secret owner.

The State Adverse Interest Act provides:

No State employe shall influence, or attempt to influence, the making of or supervise or in any manner deal with any contract in which he has an adverse interest.

71 P.S. § 776.4. The contracts which were executed between Cummins Construction Company and the department contained the following provisions:

NO OWNER, whether as an individual, member of a firm as partner, manager, officer, stockholder, shall be an

employee of the Department of Transportation nor be related by blood or marriage to any employee in a supervisory capacity with the Department of Transportation, nor shall any employee of the Department of Transportation have any pecuniary interest in the proceeds of the agreement either as an employee of OWNER or otherwise, and OWNER hereby certifies such to be the fact. The OWNER hereby agrees that for violation of this condition of the agreement, the agreement shall be terminated and the OWNER shall, upon demand, pay to the COMMONWEALTH under the terms of this agreement, and further, upon failure, refusal or default, OWNER or OWNERS do hereby empower any attorney, or the prothonotary of any court of record within this COMMONWEALTH or elsewhere to confess judgment against said OWNER or OWNERS for the full amount of all rentals paid by the COMMONWEALTH under and by virtue of this agreement, with the costs of suit and release of all errors, together with attorneys commission of 5% and interest, without stay of execution, waiving inquisition and condemnation of any real estate and do hereby waive the benefit of any law or laws in force or which may hereafter become in force, exempting property from levy and sale upon execution.

This contract provision requires that no department employee be an owner or have any pecuniary interest in the leasing company. However, Mitchell was a departmental employee and also an owner of Cummins Construction Company, and Mitchell and the other owners concealed Mitchell's ownership interest in Cummins Construction from the department. The essence of the fraud with which Shultz, Mitchell and Cummins were charged was that they made misrepresentations to the department concerning ownership of the leasing company, and as a result of these misrepresentations, were able to secure leasing contracts. Federal law was involved because the United States mails were utilized in securing signed copies of the contracts.

Shultz, Mitchell and Cummins were brought to trial on the federal indictment and the trial resulted in a hung jury.

When Shultz and Mitchell learned that Cummins would testify against them at a second trial, they entered into a plea bargain with federal authorities. After a lengthy plea bargain colloquy, Shultz and Mitchell pled guilty to one count of violating 18 U.S.C. § 1341 and § 2. At the guilty plea colloquy, the trial court explained the offenses to both defendants as follows:

> Now if this case were to go to trial, with respect to count one, the government would have to prove three essential elements of this offense and they would have to prove it to the satisfaction of a unanimous jury, and the three essential elements which the government would be required to prove are, first, the act or acts of having devised or having intended to devise a scheme or artifice to defraud, or to attempt to defraud a department of government out of property or money or credit by means of false or fraudulent representations.
>
> Second, the government would have to prove the act or acts of placing or causing to be placed in an authorized depository for mail matter a letter intended to be sent or delivered by the post office department as charged; and third, the act or acts of so using or causing the use of the United States mails willfully and with the specific intent to carry out some essential step in the execution of the scheme or artifice to defraud or to attempt to do so as charged. . . .
>
> The other section of the United States Code with which you are charged with violating is 18 United States Code, Section 2, and it states that whoever commits an act against the United States or aids, abets, counsels, induces or procures its commission is punishable as a principal, and what that means is that if a person helps another in procuring the commission of a crime, that person may be punished just as the principal person in the commission of the crime is punished.

Reproduced Record 178a–180a.

Following this explanation and a colloquy on the defendants' rights generally, the court questioned Shultz as follows:

THE COURT: Mr. Shultz, why did you decide to plead guilty?

MR. SHULTZ: Well, basically what's in the indictment is true, Your Honor.

Reproduced Record, 189a.[1]

As a result of the guilty plea colloquy, the United States District Court for the Western District of Pennsylvania accepted the guilty pleas of Shultz and Mitchell to Count One of the federal indictment, one act of mailing materials connected with their fraudulent scheme to secure leasing contracts with the Pennsylvania Department of Transportation. The remaining twenty counts of the indictment, which concerned other mailings based on the same scheme, were dismissed, and on July 6, 1979, Mitchell and Shultz were sentenced to six months in prison, three years probation, and fined $1,000 each.

1. A partial summary of allegations contained in the indictment is as follows:

1. SHULTZ, MITCHELL AND CUMMINS devised a scheme from about November 4, 1970 to defraud the Commonwealth of Pennsylvania, Department of Transportation in order to obtain money by making false and fraudulent representations and promises, knowing that such promises and representations were false when made.

2. The nature of the scheme devised by defendants was to establish a construction rental company by the name of Cummins Construction Company, which would lease construction equipment to Penn DOT in Greene County.

3. Part of the scheme was that the ownership and pecuniary interest of SHULTZ and MITCHELL would be concealed from the public and from Penn DOT.

4. MITCHELL was employed by the Department of Transportation from February 22, 1971 until May 10, 1978 as a Superintendent of Penn DOT.

5. It was also part of the scheme that SHULTZ, who was Chairman of the Greene County Democratic Committee, and MITCHELL, as a Penn DOT Supervisor, would cause Penn DOT to lease equipment from Cummins Construction Company.

6. It was further part of the scheme that MITCHELL and CUMMINS would sign the lease agreements and that MITCHELL and CUMMINS would certify that no owner of Cummins Construction Company was an employee of Penn DOT and that no employee of Penn DOT had any pecuniary interest in the proceeds of the lease agreement, when CUMMINS and MITCHELL knew all the time that MITCHELL had a secret pecuniary interest in Cummins Construction Company.

On January 26, 1981 the department filed a complaint in equity in Commonwealth Court against Mitchell, Shultz, Cummins and two corporations formed by these individuals. An amended complaint was filed on December 29, 1982. Shultz and Mitchell filed answers to both complaints. Mitchell is now deceased and is succeeded by the Estate of Harold L. Mitchell. Default judgment was entered against Cummins for lack of appearance and defense. One of the corporations, Appalachian Pipeline, was removed at the request of the defendant.

Based on the guilty plea, the department moved for summary judgment. On May 20, 1985, Commonwealth Court granted summary judgment as to liability only against Shultz and Mitchell. An appeal to this Court from that judgment was quashed on November 22, 1985. Thereafter the department moved for summary judgment on the issue of damages, and on May 2, 1986 Commonwealth Court granted that motion also, awarding damages in the amount of $892,450.71, the full amount of rentals paid by the department. The damages were assessed against Shultz and the estate of Mitchell. Shultz now appeals as of right from the lower court's order.

The issues in this case are whether summary judgment may be granted in a civil case based upon a plea bargained admission of guilt to the charge of defrauding the Commonwealth; and secondly, whether summary judgment was properly granted in this case as to damages.

The first issue is whether summary judgment may be granted based upon a guilty plea in a criminal case, the operative facts of which are identical to those which would be litigated in the civil case, and which, if proved, would establish civil liability. In *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965), the trustee in bankruptcy of a concrete contractor sued to recover sums extorted from the contractor by one Stirone. The trustee's claim was that Stirone threatened to use his position as a "labor leader" to cause the contractor to lose certain construction contracts which he then had unless the contractor paid a certain sum of

money. As a result of the payments at issue in the trustee's case, but prior to trial of the trustee's case in Pennsylvania courts, Stirone was tried and convicted in federal court of violation of the Hobbs AntiRacketeering Act. His federal conviction was introduced in the trustee's case as some evidence of duress and to impeach Stirone. The trial court charged the jury that the defendant's record of criminal conviction was conclusive evidence of extortion, and therefore, the plaintiff was entitled to a directed verdict for the sums paid. In the appeal which followed, this Court formed the issue as follows:

> In a civil suit against a convicted extortioner to recover the extorted money, is proof of the conviction of the extortion conclusive evidence of the fact of extortion?

416 Pa. at 496, 206 A.2d at 625. After noting that there is disagreement about the treatment of this issue in other jurisdictions and that in Pennsylvania "judgments in criminal cases for years were held inadmissible to establish the facts in a civil case," this Court held that the lower court was correct in regarding the federal conviction as conclusive evidence of the fact of extortion:

> The defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in a cloak of presumed innocence. His case was twice presented to a federal jury which found him guilty of extortion beyond a reasonable doubt, upon the same facts which are now urged as the basis for his civil liability. To now hold that the effect of those jury determinations is *nil* not only would be to fly in the face of reason, but also would be a general indictment of the whole American jury system. We are not now prepared to say that the mere technical effect of the doctrines of res judicata and collateral estoppel regarding identity of parties is sufficient to overcome the policy which requires us to give conclusive effect to the prior conviction herein. The defendant should not now be heard to deny that which was established by his prior criminal conviction, without proof that his conviction was

procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself.

416 Pa. at 498–99, 206 A.2d at 626.

In the present case, the fact that Shultz pled guilty to one count of the indictment does not produce a different result than if he had been convicted after a jury trial, for it is well settled that a guilty plea constitutes an admission to all of the facts averred in the indictment. *Commonwealth ex rel. Walls v. Rundle*, 414 Pa. 53, 198 A.2d 528 (1964). Additionally, as noted above, Shultz admitted at the guilty plea hearing that all of the facts alleged in the indictment were true. *See* footnote 1, supra.

Since Shultz's criminal conviction may be used to establish the operative facts in a subsequent civil case based on those same facts, *Hurtt*, supra, and since Shultz's guilty plea constitutes an admission to all the facts averred in the indictment, *Commonwealth ex rel. Walls v. Rundle*, supra, which Shultz admitted in any event, the lower court in this case was correct in granting summary judgment as to Shultz's liability to the department on the contract.

Next Shultz claims that it was error for the lower court to grant summary judgment as to damages. The main thrust of his argument is twofold: first, that summary judgment is inappropriate because there is a dispute as to the facts of the case, and second, that the forfeiture clause is unenforceable because it is a penalty.

As to the first claim, that there is an issue of fact in the case which requires a trial, the Commonwealth's amended complaint contains the following allegation:

54. The total amount paid by the Department to the Defendant, Cummins Construction Company, for the aforementioned agreements during part or all of the calendar 1971 [sic] to 1978 is $892,450.71. (Schedule of payments attached and marked as Exhibit "B."

Shultz's answer to this allegation is:

54. Denied in that the answering Defendants are without such knowledge or information because the means of

proof are within the exclusive control of a hostile person or adverse party.

Had there been no motion for summary judgment, this denial, of course, would have been sufficient to raise damages as an issue at trial. The question here, however, concerns the effect of this denial, coupled with an assertion that the Commonwealth's figures may be wrong, in response to a motion for summary judgment.

Rule 1035 of the Rules of Civil Procedure provides, in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Pa.R.C.P. 1035(d).

█ If Shultz wished to contest the accuracy of the Commonwealth's statement of damages, he was required to do it, once a motion for summary judgment was made, by submitting affidavits, depositions, answers to interrogatories, or admissions on file, Pa.R.C.P. 1035(b), which would establish that there is an issue as to a material fact in the case. Although the record indicates that Shultz filed a brief in opposition to this motion, there are no affidavits or other materials which contest the statement of damages made in the Commonwealth's motion for summary judgment. In the absence of such affidavits or other materials, Shultz may not defeat a motion for summary judgment merely by denying that the Commonwealth's statement of damages is accurate. If he were so able to defeat the motion, he would have done the very thing that Rule 1035 disallows: rest on denials in the pleadings. Since Shultz did no more in response to the motion for summary judgment than assert a denial, the lower court did not err in granting the motion.

Of course, if Shultz is correct in his next claim that the forfeiture provision of the contract is an unenforceable penalty, summary judgment should not have been granted because the existence of an unenforceable penalty would create an issue as to the nature of the damages in the case. We turn our attention, therefore, to the question of whether the forfeiture clause is an unenforceable penalty.

As Corbin points out, there are limitations on the ability to contract:

> The rules of law governing the enforcement of penal bonds and of contract provisions for penalties and liquidated damages are rules as to the validity of express promises. They prescribe limitations upon our power to make enforceable contracts.

5 Corbin on Contracts § 1054, p. 319 (1964). According to the Restatement Second of Contracts many jurisdictions treat the problem of these limitations as follows:

### § 356. Liquidated Damages and Penalties

(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

(2) A term in a bond providing for an amount of money as a penalty for non-occurrence of the condition of the bond is unenforceable on grounds of public policy to the extent that the amount exceeds the loss caused by such non-occurrence.

Restatement of Contracts, Second, § 356.

■ Although we express no opinion as to the validity of this section of the restatement in Pennsylvania, and our research indicates that this Court has not expressly made reference to this section, there are some parallels between the language of the restatement and our own caselaw which requires that liquidated damages be awarded only in cases where the amount is reasonable and there is a difficulty in assessing the harm that would be caused by a breach. *See*

*Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 212, 146 A.2d 714, 717 (1958).

In order to address the question of whether the damages agreed to in this case were "reasonable," we must consider what it was that the parties were bargaining for. The Commonwealth's purpose in entering into the rental contracts with Cummins Construction Company was not only to rent equipment, but also it was to insist on and preserve a fair and impartial procedure in securing the rentals. When Shultz and the other owners of Cummins purposely and fraudulently frustrated the purpose of fair and impartial dealing and breached the contractual requirement which plainly stated that no owner of Cummins be an employee of the department and that no department employee have a pecuniary interest in the contract, the Commonwealth was substantially injured.

And what was the nature of the injury? By contracting with persons who are their own employees, the department participated, unwittingly, in a scheme which undermined and called into question the impartiality and fair dealing of a department of government. Additionally, it involved government in a scheme in which it was uncertain as to whether tax dollars were being spent for value, and a scheme which was in violation of a the State Adverse Interest Act. When government is perceived—perhaps by those who may have been told of the fraud—as no longer fair and impartial, it is seen as a center of corruption and criminal opportunity. Additionally, all branches of government become tarred, in the public eye, with the same brush as the supposedly corrupt department. In short, the injury is to the confidence that citizens may have in their government and to the certainty that value has in fact been received for tax dollars spent. If left unchecked, the injury is also that others, equally adept at fraud and deception, may themselves decide to participate in misrepresentations and scams involving government contracts.

These injuries are enormous, and the difficulty of ascertaining damages is considerable. What is the value of

fair dealing and confidence in government? Without being able to determine what it is worth, we have no difficulty in determining that forfeiture of rental payments made under this contract is not excessive, and is therefore, in traditional contract terms, not a "penalty," but rather, "liquidated damages." [2]

■ Further, Shultz claims that the amount of damages is arbitrary in that the amount to be forfeited, which is the sum already paid in rental fees, depends upon when the deception is discovered. If the deception is discovered early, the forfeiture will be relatively small; if it is discovered late, the amount will be large. We disagree that this forfeiture scheme is arbitrary. In fact, far from being arbitrary, the forfeiture required is precisely proportionate to the injury inflicted by the fraud. If the fraud is discovered early, the injury will be relatively less severe and the forfeiture also will be of lesser amount. That the fraud may not be discovered for some time is an eventuality caused by the perpetrator himself and may not be used as an argument in favor of disproportionality.

■ Finally, there is some concern that in cases involving the fraudulent procurement of government contracts, sanctions against the perpetrators of the fraud should be left to the criminal law or to tort law. We disagree. The department's remedies should not be limited to actions apart from the contract. Shultz and the others need not have signed the contracts in this case. They need not have perpetrated the fraud that they did. *They* were not deceived or the victims of sharp practice. On the contrary, they were the deceivers, and they were made aware, by virtue of the plain

**2.** Shultz claims that he is entitled to a setoff for the value of the services performed and the rentals received. This claim is without merit. Once it has been determined that liquidated damages are recoverable under the contract, evidence of actual damage to the Commonwealth is inadmissible. Corbin puts it this way:

Evidence as to the existence and extent of injury may be admissible to aid the court in determining the character of the contract provision; but it is no longer relevant after the court has determined that the provision is a true liquidation and does not specify a penalty.

5 Corbin on Contracts, § 1061, p. 353 (1964).

language of the contract, that if they deceived the department as to ownership of the company, they would be liable to pay back that which they had fraudulently received. Why should the department now have to initiate criminal or tort proceedings in this case to recover *that which the parties already agreed would be recovered?* There is an elegant simplicity, an equitable proportionality, and a clear sense of justice involved in this contractual scheme which we are loath to disturb. Assuming that words mean what they say and are not mere inkblots on paper, the owners of Cummins Construction Company *knew* what they risked by perpetrating their fraud. They should not now be heard to complain that the risk was too great or that it should be litigated in some other forum on some other theory of law.

We conclude, therefore, that Commonwealth Court was not in error in awarding summary judgment as to damages as well as to liability.

AFFIRMED.

HUTCHINSON, Former J., did not participate in the consideration or decision of this case.

NIX, C.J., files a concurring opinion.

LARSEN and McDERMOTT, JJ., note their dissents.

NIX, Chief Justice, concurring.

I have serious reservations as to the correctness of the judgment in *Hurtt v. Stirone*, 416 Pa. 463, 206 A.2d 624 (1965). The fact that a person is found guilty in a criminal trial should not preclude that individual from contesting his guilt of those facts in a civil trial. This does not mean that the fact of the criminal conviction may not be introduced during the subsequent civil trial. However, the court below treated the fact of the federal conviction as conclusive evidence of the facts. It does not, in my judgment, undermine the integrity of our system to allow a subsequent jury in a civil case to make its own independent judgment on the issue.

In this case, however, I can agree with the result because there was more than a mere finding by a jury of guilty, but, rather, an entry of a plea which represented the defendants' admission. Under these circumstances, I can concur in the Order of the Court.

535. A.2d 588