**Anthony D. CALABRO, R.Ph., T/A Tony's Professional Pharmacy, Petitioner,**

v.

**DEPARTMENT OF AGING, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.

Decided Feb. 4, 1997.

---

John G. DiLeonardo, Harrisburg, for petitioner.

Jacqueline M. Welby, Harrisburg, for respondent.

Before PELLEGRINI and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI, Judge.

Anthony D. Calabro, R.Ph., T/A Tony's Professional Pharmacy (Calabro) petitions for review of the March 15, 1996 order of the Commonwealth of Pennsylvania, Department of Public Welfare, denying his appeal from the Commonwealth of Pennsylvania, Department of Aging's (Department) action seeking $15,802.02 restitution from Calabro, and or-

dering Calabro to reimburse the Department's PACE [1] program $15,802.02.

Calabro owns and operates a pharmacy known as "Tony's Professional Pharmacy" and was a provider in the Department's PACE program. As a provider, he entered into a "Provider Reenrollment Agreement for Pennsylvania Pharmaceutical Assistance Contract for the Elderly" (Agreement) in which Calabro agreed to "comply with all Federal and Pennsylvania laws generally and specifically governing participation in the PACE Program" and "to be knowledgeable of and to comply with applicable rules, regulations, rates and fee schedules promulgated under such laws and any amendments thereto." (Section 1, A of the Agreement).[2]

The Department has also promulgated regulations with respect to the PACE Program. Those regulations, at 6 Pa.Code § 22.84(a)(2) and (3), provide that "[t]he Department may terminate an enrolled provider's agreement and seek restitution from that provider if it determines that the provider ... has ... [f]ailed to comply with the conditions of participation in the PACE program" or has "[f]ailed to comply with the terms of the provider agreement." In order for a provider to become enrolled as a participant in the PACE program, it must meet certain conditions of eligibility at the time of its initial application and on an ongoing basis. 6 Pa.Code § 22.62(a)(1). Among those conditions are that the pharmacy be currently licensed by the Commonwealth. 6 Pa.Code § 22.61(a). Moreover, where "the Department determines that a provider has billed and received payment for prescription drugs for which payment should not have been made, it will review the provider's paid and unpaid invoices and compute the amount of overpayment or improper payment." 6 Pa. Code § 22.84(g)(1). Restitution or repayment shall constitute the amount of all unauthorized payments made by the Department to a provider, plus interest. 6 Pa.Code § 22.84(g)(2).

Because he failed to complete 30 continuing pharmaceutical education credits, Calabro's license was not renewed during the period between September 1, 1993, and March 20, 1994. Because Calabro was unlicensed during that period, the Department notified him that all payments to his pharmacy had been suspended and that, absent valid renewal, he would no longer be permitted to participate in the PACE program.[3] The Department further informed him that he was required to repay all $15,802.02 of payment made by PACE to his pharmacy during the period in which he dispensed prescriptions without a valid pharmacy license.

■ Calabro appealed the Department's requirement of repayment, but the Department informed him that he was responsible for repayment of all claims by him for prescriptions filled without a license, in total of $15,802.02.[4] After a hearing at which Calabro contended that despite his failure to renew his pharmacy license, the Department was not entitled to reimbursement of all the monies which it paid to him for dispensing PACE prescriptions during the period between September 1, 1993, and March 17, 1994, a hearing officer of the Department of

---

1. PACE is an anacronym for Pharmaceutical Assistance Contract for the Elderly, a State program, administered by the Department of Aging, which provides elderly citizens of the Commonwealth living on fixed incomes, financial assistance in obtaining prescription drugs.

2. Section 1, F of the Agreement states:

The Provider represents that the information submitted in or with the application for enrollment to participate in the PACE program and from which this contract ensued is true, accurate, and complete. The Provider agrees further that such representation shall be a continuing one and that the Provider shall notify the Program in writing within fifteen (15) days of its occurrence of any fact which arises or is discovered subsequent to the date of the application which affects the truth, accuracy, or completeness of such representation ...

3. When Calabro obtained the necessary continuing education credits, the Department authorized the reinstatement of Tony's Professional Pharmacy in the PACE program, effective March 17, 1994.

4. Initially, the Department refused to grant a hearing on the appeal, but when Calabro filed a petition for review with this court, alleging that his appeal was denied by the Department without notice or an opportunity to be heard, the Department agreed to give him a hearing. Calabro then discontinued his action with this court.

Public Welfare found the matter to be controlled by Section 22.61 of the regulations. That section requires that the pharmacy be currently licensed by the Commonwealth. 6 Pa.Code § 22.61(a). Because a provider's failure to have current licensing entitles the Department to "terminate an enrolled provider's agreement and seek restitution from that provider", 6 Pa.Code § 22.84(a)(2) and (3), the hearing officer concluded that the decision of the Department, demanding restitution, was correct, and denied Calabro's appeal. She ordered Calabro to reimburse the Department in the amount of $15,802.02. Also dated March 15, 1996, is the Final Administrative Action Order from the Office of Hearing and Appeals which affirmed the hearing officer's order of the same day. This appeal follows.[5]

█ Calabro initially contends that by filling PACE prescriptions during the period in which his pharmacy license was inadvertently not renewed, he did not materially breach his contract with PACE so as to preclude him from recovering any payment for services and supplies rendered to PACE beneficiaries during that time. While admitting that his pharmacy license lapsed, he contends that because the State Board of Pharmacy did nothing to enjoin his practice during that time, that lapse did not constitute a material breach of his PACE provider Agreement.

Because the Agreement signed by Calabro, under which he became a PACE provider, incorporates by reference the Department's regulations, his failure to have current licensing constitutes a material breach of the provider Agreement. Only a currently licensed pharmacy is able to participate in the PACE program. Calabro, despite his admitted lack of current licensing between the period of September 1, 1993, and March 17, 1994, continued to fill prescriptions and submit claims under the PACE program. His act of con-

tinuing to operate as a PACE provider during a period in which he was unlicensed constitutes a material breach of the condition of the provider Agreement that required him to be "currently licensed." Accordingly, the Department is entitled to seek restitution from the provider for "the amount of all unauthorized payments which the Department has made to a provider ..."[6]

█ Even if there was a material breach, Calabro contends that the amount of restitution sought by the Department was excessive. If responsible to repay the Department for prescriptions filled during the period in which his license was suspended, he contends that restitution should be based on the amount of the claims less the proceeds from the prescriptions—i.e., that he should be liable for the costs associated with his professional services only, not the goods received by PACE recipients.

Initially, the PACE regulations clearly provide that where "the Department determines that a provider has billed and received payment for prescription drugs for which payment should not have been made, it will review the provider's paid and unpaid invoices and compute the amount of overpayment or improper payment." 6 Pa.Code § 22.84(g)(1). Moreover, they also state that restitution or repayment shall constitute the amount of all unauthorized payments made by the Department to a provider, plus interest. 6 Pa.Code § 22.84(g)(2).

█ The provider Agreement, by incorporating the Department's regulations, specifically states that restitution or repayment shall constitute the amount of all unauthorized payments made by the Department to a provider, plus interest,[7] essentially provides the Department with the ability to collect liquidated damages in the event of a breach by a provider. Liquidated damages as set forth within a contract compensate a party

---

5. Our scope of review of a final order of the Department of Public Welfare is limited to a determination of whether substantial evidence supports the findings of fact, whether constitutional rights were violated, or whether errors of law were committed. *Springer v. Department of Public Welfare,* 128 Pa.Cmwlth. 166, 562 A.2d 1033 (1989), *petition for allowance of appeal denied,* 525 Pa. 591, 575 A.2d 120 (1990).

6. This regulation also gives the Department the right to seek interest on that amount, but the Department here seeks only the full costs of the prescriptions plus the service fee and not interest.

7. 6 Pa.Code § 22.84(g)(2).

for difficult-to-prove losses, and "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts." *Priebe & Sons v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 126, 92 L.Ed. 32 (1947) (overruled by *United States v. Detroit,* 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958)). Clauses setting forth liquidated damages are enforced where they are reasonable, and fair attempts to fix just compensation for anticipated loss caused by breach of contracts. *Id.* If a clause purporting to set forth damages does not actually do so, but rather constitutes a penalty, it is unenforceable. *Department of Transportation v. Interstate Contractors Supply Co.,* 130 Pa.Cmwlth. 334, 568 A.2d 294 (1990).

Our Supreme Court considered the difference between liquidated damages and penalties in *Department of Transportation v. Mitchell,* 517 Pa. 203, 535 A.2d 581 (1987). In *Mitchell,* the Cummins Construction Company entered into a contract with the Department of Transportation (DOT) to lease it construction equipment. The contracts that were executed between Cummins and DOT contained a provision prohibiting any owner of Cummins to be an employee of DOT or related to by blood or marriage any employee in a supervisory capacity of DOT. Violation of such agreement would result in that owner's payment to DOT the full amount of all rentals paid by DOT to that owner, along with legal fees and interest. However, Mitchell, one of Cummins' owners, was an employee of DOT, and he and two other owners concealed that ownership interest. After an indictment against the three owners resulted in a guilty plea from Mitchell and others, DOT brought a claim in equity against them to enforce the liquidated damages clause. Summary judgment for DOT was granted and the owners appealed.

As part of their appeal, the owners contended that the forfeiture provision of the contract was an unenforceable penalty. Our Supreme Court noted that liquidated damages should only be applied in cases where the amount is reasonable and there is a difficulty in assessing the harm that would be caused by a breach. However, in consider-

ing what is a reasonable amount, the Court stated that it was required to consider what it was that the parties were bargaining for. Because the clause at issue bargained for a "fair and impartial procedure in securing the rentals," and because the injuries that could result from the failure to act fairly and impartially could be enormous, the difficulty in ascertaining damages was, according to the court, enormous. Thus, it held that the forfeiture of rental payments made under the contract was not excessive and did not constitute a "penalty" in contract terms, but rather "liquidated damages."

Notably, in *Mitchell,* the owners went on to claim that they were entitled to a set-off for the value of the services performed and the rentals received. The Supreme Court held that claim to be without merit because, "[o]nce it has been determined that liquidated damages are recoverable under the contract, evidence of actual damage to the Commonwealth is inadmissible." *Id.* 535 A.2d at 587, n. 5. Citing to *Corbin on Contracts,* the court noted, "Evidence was to the existence and extent of injury may be admissible to aid the court in determining the character of the contract provision; but it is no longer relevant after the court has determined that the provision is a true liquidation and does not specify a penalty." *Id.,* citing, 5 *Corbin on Contracts,* § 1061, p. 353 (1964).

Here, the relevant clause in the provider Agreement which Calabro entered into gives the Department the right to restitution where that Agreement or incorporated regulations have been violated. Calabro has admittedly filled over 615 PACE prescriptions during a period in which he was unlicensed. Whether the Department's recoupment of the unauthorized payments made to Calabro during his unlicensed period is reasonable must be considered in the context of the Department's purpose in promulgating such a regulation. The requirement that in order for a provider to participate in the PACE program, he or she must be licensed, has the purpose of ensuring that recipients of the government PACE program are guaranteed the highest quality of care and service, and are distributed "life sustaining medications" only by those professionals who are licensed

and qualified to do so. As in *Mitchell,* the possible injuries which could result from the failure of a provider to have the requisite licensing are enormous, and the value of the claims filed by an unlicensed provider are not excessive. Consistent with the Supreme Court's holding in *Mitchell,* we hold that the recoupment of all monies involved in such claims is not excessive and constitutes liquidated damages, recoverable under the provider Agreement and applicable regulations, not a "penalty".[8] Moreover, again, as in *Mitchell,* we need not consider Calabro's claim that he is entitled to a set-off because, "once it has been determined that liquidated damages are recoverable under the contract ... evidence as to the existence and extent of injury ... is no longer relevant." *Id.*[9]

Accordingly, the decision of the Office of Hearing and Appeals is affirmed.

### ORDER

AND NOW, this 4th day of February, 1997, the decision of the Department of Welfare, Office of Hearing and Appeals, dated March 16, 1996, is affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent. The majority's affirmance of the decision of the Department of Public Welfare is based on our Supreme Court's decision in *Department of Transportation v. Mitchell,* 517 Pa. 203, 535 A.2d 581 (1987). However, because of the unique nature of the contract at issue in the present matter, I do not believe that *Mitchell* is controlling.

As noted by the majority, the agreement at issue in *Mitchell* was an arms-length contract for the leasing of construction equipment. In contrast, the Provider Agreement in the matter herein had the effect of establishing an "agency" on behalf of the sovereign to accomplish the task of assisting elderly residents of the Commonwealth living on fixed incomes in obtaining prescription drugs. As such, Calabro was acting as an "agent" of the Commonwealth, and his obligations under the Provider Agreement were not analogous to those of parties to arms-length contracts for the provision of goods. As an "agent" of the Commonwealth, Calabro delivered the relevant services, thereby enabling the Commonwealth to attain the objective of the PACE program.

In light of the important governmental purpose that the Provider Agreement serves, I believe that an affirmance of the decision rendered by the Department of Public Welfare poses a threat to the continued stability of the PACE program. The imposition of liability in the absence of injury may well deter or impede other "agents" from participating in the program. While I do not condone Calabro's failure to renew his license, I disagree that the sovereign is entitled to full restitution where it incurred no harm and enjoyed the benefit of the services of its "agent." Accordingly, I would vacate and remand the order of the Department of Public Welfare.

---

**8.** *See also Jack v. Department of Public Welfare,* 130 Pa.Cmwlth. 549, 568 A.2d 1339 (1990), in which we held that where a pharmacist-provider under the Medical Assistance Program was convicted of a criminal act, so that his license was terminated, where he continued to fill prescriptions billed to the Department of Public Welfare under that Program, the Department was entitled to restitution, even though the provider did not receive notice of his termination until 20 months after his conviction.

**9.** For the same reason, Calabro's claim of unjust enrichment cannot be sustained.