# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Slade,                          :
               Appellant          :
                                :
                                :    No. 350 C.D. 2023
          v.                          :
                                :    Submitted:  June 3, 2025
The Laboratory Charter School           :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                 **FILED:  July 10, 2025**

Michael Slade appeals from the order entered by the Court of Common Pleas of Philadelphia County (trial court), which granted the motion for summary judgment filed by The Laboratory Charter School (School).  Although his underlying complaint pleaded several claims, Slade only contends the trial court erred in granting summary judgment for his breach of contract claim.  We affirm.

## I. BACKGROUND[1]

In 2003, Slade was convicted of four counts of felony credit card fraud, possession of marijuana, and possession of drug paraphernalia.  Between 2005 and 2014, Slade worked at the School, starting as a teacher and ending as CEO.[2]  When he began working for the School, Slade completed his own criminal background check using his father's name (also named Michael Slade) and social security

---

[1] We state the facts in the light most favorable to Slade as the non-moving party.  *Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017).

[2] Slade's brief states 2005, and the trial court's opinion states 2006.  *Compare* Slade's Br. at 8, *with* Trial Ct. Op., 2/22/24, at 1.  It appears the correct date is 2005.

number. Upon receiving the background check, Slade altered the document to reflect his own birthdate and social security number and submitted the altered document to the School.[3]

In 2012, the School District of Philadelphia (District) audited the School and discovered Slade's prior convictions and alteration of the background check. During the audit, Slade requested that he be referred to as "Dr. Slade" although he had not received a doctorate degree. In 2013, Slade was convicted of driving under the influence, which he failed to disclose. In 2014, the School fired Slade because of his alteration of the background check, misrepresentation of himself as a doctor, and failure to disclose his 2013 conviction.[4] In 2015, the Professional Standards and Practices Commission (Commission) also revoked his teaching certificates because of his 2003 convictions.

Following his termination, Slade sued the School, and discovery ensued. In relevant part, Slade testified that the absence of a teaching certificate did

---

[3] To be clear, around February 2005, Slade had originally requested a criminal background check for himself using his own information. Mot. for Summ. J., 9/6/22, at Ex. 9 (Department audit report, dated July 24, 2012, which was sent to the School). The background check revealed his prior convictions. Subsequently, around August 2005, Slade requested another check using his father's name and social security number. *Id.*

[4] We quote the School's reasons as follows:

1. Your alteration of the August 30, 2005 criminal background check, which altered document you provided to Auditors for the School in 2012;
2. Your misrepresentations that you earned a doctorate in education when in fact you had not obtained such a degree; and
3. Your 2012 [sic] conviction and your failure to report your 2012 [sic] DUI conviction to the Board of Trustees as required by 24 P.S. § 1-111.

In the Board's view, all of the above grounds constitute termination "for cause." Furthermore, in the Board's view, the "for cause" termination are for reasons that violate G.a.(i), G.a.(iii) and G.a.(iv) of the June, 2011 Employment Agreement.

Mot. for Summ. J., 9/6/22, at Ex. 10 (School's termination letter, dated 5/19/14); *see also id.* at Ex. 9 (Department audit, at 7); *see generally* Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 1-111.

not "hinder [him] from working in the field."  Mot. for Summ. J., at Ex. 2 (Notes of Testimony (N.T.) Slade Dep., 10/6/15, at 63 ("This doesn't hinder me from working in the field")).

The parties settled in 2017.  The settlement agreement contained a non-disparagement clause that prohibited the School from disparaging Slade.[5]  Am. Compl., 5/25/21, at Ex. A (settlement agreement).  The agreement also required the School, in "response to any direct inquiries" about Slade's employment, to provide only the dates of employment and positions he held.  *Id.*  The agreement generally provided that in a proceeding to enforce the agreement, the prevailing party could recover "actual legal damages."[6]  *Id.*

---

[5] The non-disparagement clause states that the School

> agrees that it will direct its Board and officers not to make any disparaging, demeaning, or denigrating comments to any person or entity, or take any action towards Mr. Slade, whether in oral discussions or in writing, relating to any aspect of the employment relationship or the termination thereof, nor shall [School], its Board and/or officers act in any way that may damage the reputation or integrity of Mr. Slade before its employees, consultants, principals, customers, suppliers, vendors, bankers, investors, agents or representatives, or other third party, whether past, present or future, and whether or not based on or with reference to their past relationship;; [sic] provided, however, that this Paragraph . . . shall have no application to any evidence or testimony requested as ordered by any court or government agency.

Am. Compl. at Ex. A (settlement agreement, ¶ 15(b)).  Thus, a judicial or agency subpoena would not violate the non-disparagement clause.

[6] In relevant part:

> Nothing in this Agreement shall be read to limit the rights of the Parties to enforce this Agreement or to claim that one or more of the Parties has violated her/its obligations under this Agreement.  If any Party breaches any part or parts of this Agreement, proceedings at law and/or equity may be instituted against that Party to enforce the Agreement. . . .  Except as otherwise set forth herein, the prevailing Party in an action brought to enforce this Agreement shall recover from the breaching Party actual legal damages incurred in connection therewith including, without limitation, attorney's fees and costs. . . .

Am. Compl. at Ex. A (settlement agreement, ¶ 18) (emphases omitted).  Unlike other clauses in the

After the School fired him, Slade worked various positions, including substitute teaching roles that did not require certification. For example, Slade taught for the Archdiocese of Philadelphia before it terminated him.

In 2019, Slade applied to teach for Penn Medicine at Mill Creek School, contingent on being certified. Penn Medicine, however, rescinded the offer because he did not have a certificate. On September 17, 2019, Slade emailed Penn Medicine stating that he "never received notice" of the 2015 Commission hearing, "so they revoked [his] certificate because of [sic] receiving probation for credit card fraud in 2001." Answer to Mot. for Summ. J., at Ex. E. Slade stated: "I applied for a hearing today, but that could take months." *Id.* As set forth below, the Commission denied Slade's request to reinstate his teaching certificates in 2018, prior to Slade applying to Penn Medicine.

Meanwhile, in 2018, Slade applied for reinstatement of his teaching certificates with the Commission. In support, Slade's petition for reinstatement stated that his doctorate was "in progress" and he was previously employed by the Archdiocese. Am. Compl. at Ex. F.

The Commission sent a letter to the School soliciting the School's recommendation, as Slade's former employer. The Commission's letter did not require the School to respond. On behalf of the School, Dr. Princess Williams, president of the board of trustees, wrote a March 28, 2018 letter "vehemently" opposing Slade's reinstatement. In the School's view, all teachers should have "good moral character," and that "public records reflect what occurred" at the School during Slade's tenure.[7]  On April 20, 2018, the Department of Education

agreement, the instant agreement did not provide for liquidated damages for a violation of the non-disparagement clause. *See generally id.*

[7] For completeness, the School's letter to the Commission follows in full: "On behalf of the [School's Board of Trustees], I write to oppose the petition for reinstatement filed by Michael

(Department) also notified the Commission that it opposed Slade's reinstatement on several grounds. Am. Compl. at Ex. E.

Subsequently, the Department requested a continuance of the scheduled hearing because it learned about, *inter alia,* Slade's alteration of his criminal background check and misrepresentation of himself as a doctor.[8] The Department explained that since Slade's petition for reinstatement reflected prior employment with the Archdiocese, the Department wished to investigate whether Slade disclosed his prior convictions. The Commission granted the motion and the Department subpoenaed employment records from the Archdiocese and the School. Slade only moved to quash the subpoena to the Archdiocese, which the Commission denied.

At the 2018 Commission hearing, Slade testified and did not call any other witnesses. The Department called two witnesses, including Mayer Krain, one of the auditors. Krain testified about his 2012 audit, which had revealed Slade's alteration of his background check and misrepresentation of his doctorate.

The Commission denied Slade's application in 2019 on multiple grounds. Those grounds included Slade's alteration of his criminal background check, misrepresentation of himself as a doctor, and lack of credibility. *See generally* Comm'n Op., 5/24/19, at app. A (adopting the hearing officer's opinion).[9] Slade did

---

Slade, a former [School] teacher and Chief Executive Officer." Am. Compl., 5/25/21, at Ex. C. "As the [Commission] is aware, according to the Pennsylvania Department of Education ('PDE') regulations, PDE is required by law to only issue Pennsylvania certificates to applicants who possess good moral character (24 P.S. § 1209 [sic]; 22 Pa. Code § 49.12.) The good moral character requirement applies to all applicants; [sic] without exception. Public records reflect what occurred at [the School] during Mr. Slade's tenure. For these reasons, the [Board] vehemently opposes the [sic] Mr. Slade's petition for reinstatement." *Id.* (citation modified); *see generally* Act of March 10, 1949, P.L. 30, as *amended*, 24 P.S. § 12-1209(2) (stating that no "teacher's certificate shall be granted to any person who . . . does not have a good moral character"); *accord* 22 Pa. Code § 49.12 (requiring an educator to be "of good moral character").

[8] The Department did not explain why it was unaware of its own 2012 audit.

[9] Specifically: "Based on the record, the evidence fails to establish that [Slade's] certificates

not file exceptions or otherwise appeal the decision.

In 2020, Slade sued the School for tortious interference, breach of the settlement agreement, and defamation. With respect to the breach of contract claim, Slade only alleged a breach of the non-disparagement clause. As for damages, Slade requested, *inter alia*, past and future monetary losses, compensatory damages, and reasonable counsel fees.[10] The School moved for summary judgment, which the trial court granted on all counts. Order, 11/10/22. We discuss the motion and Slade's answer in further detail below. Slade timely appealed to the Superior Court and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The Superior Court transferred the appeal to this Court.

The trial court filed a responsive opinion, stating that the School's letter did not violate the settlement agreement's non-disparagement clause. Trial Ct. Op. at 4-5. In relevant part, the court reasoned that the School's letter, as a matter of law, did not disparage or damage the reputation of Slade. *Id.* at 7-8. In the court's view,

---

should be reinstated. The record contains no any [sic] credible reputation or character evidence, no evidence conveying [Slade's] reputation among his teaching peers and professional supervisors, and no evidence indicating that, since his conviction and revocation, [Slade] is and has been on a path to rehabilitation which would now justify the reinstatement of his certificates. There is no evidence to support any findings as to his reputation for honesty and integrity in the community of people among whom he is known. Instead, the evidence points to [Slade's] continuing lack of honesty, and strongly suggests that, in several instances, [Slade] has not been a model of good citizenship and societal responsibility." Comm'n Op., at app. A, at 41-42.

[10] For all three counts, Slade requested the following damages: "a) Damages for past and future monetary losses as a result of [the School's] wrongful conduct; b) Compensatory damages; c) Punitive damages; d) Liquidated damages; e) Emotional pain and suffering; f) Reasonable attorneys' fees; g) Recoverable costs; h) Pre and post judgment interest; i) An allowance to compensate for negative tax consequences; j) Order [the School] to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiffs' record of employment, including, but not limited to, the pre-textual reasons cited for his adverse actions; and k) Awarding any/all other extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder." Am. Compl. at 8-9 (prayer for relief) (citation modified). Some of the listed damages are simply not recoverable in a breach of contract claim, such as punitive damages.

6

there was no evidence of record suggesting that the Commission relied solely on the School's letter in denying Slade's application for reinstatement. *Id.* at 8-9. The court noted the Commission discussed other grounds for denying reinstatement, including Slade's misrepresentation of his credentials. *Id.* at 11.

## II. ISSUES

Slade raises two issues.[11] First, Slade contends he presented sufficient record evidence proving the elements for his breach of contract claim, and, thus, the trial court should have denied summary judgment. Slade's Br. at 15. Second, Slade maintains the court "made clearly erroneous conclusions in granting summary judgment." *Id.* at 19.

## III. DISCUSSION[12]

### A. Disparagement

In support, Slade argues that the record contained sufficient evidence to establish each element of a breach of contract claim. *Id.* at 15. In particular, Slade

---

[11] Slade's brief raises four issues, *see* Slade's Br. at 7, but divides the argument into two issues, which violates Pa.R.A.P. 2119(a). *See* Pa.R.A.P. 2119(a) (providing that "argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). We state the issues as presented in Slade's argument section.

[12] "In reviewing a grant of summary judgment, this Court's standard of review is *de novo* and our scope of review is plenary." *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649 (Pa. 2020) (citation omitted). Generally, a trial court grants summary judgment when "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Maas v. UPMC Presbyterian Shadyside*, 234 A.3d 427, 436 (Pa. 2020) (citation modified). A court must "take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Id.* (citation omitted). We construe settlement agreements under "contract law principles." *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011). Our Supreme Court explained that when the "language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." *Id.* (citation modified).

directs our attention to the School's letter, which, in his view, implied he lacked good moral character and damaged his reputation before a third party. *Id.* at 16-19. The trial court, Slade maintains, should have viewed the School's letter in his favor as "any reasonable factfinder could have inferred" that the letter harmed his reputation or integrity. *Id.* at 16.

Slade also stresses that the Commission "questioned his credibility, citing a number of instances which were only *coincidentally* discovered after [the School] sent a letter to the Department specifically referring to events which occurred during [Slade's] employment and resulting in a subpoena into employment records which, contrary to the Court's conclusion, were not a matter of public record. This was clear as it required a subpoena to obtain said records." *Id.* (emphasis in original).[13]

Slade additionally argues that the "information provided by" the Department in opposition to his petition for reinstatement "mirrored the same alleged reasons [the School] gave to [Slade] for his termination of employment." *Id.* at 17. Per Slade, it was "clear from the identical reasoning that a factfinder could infer at trial that this information was provided to" the Department by the School.[14] *Id.* As a result, Slade blames the School, "at least in part," for hindering his attempts to continue "his career as a teacher as he was now unable to seek employment as a certified teacher." *Id.* at 13-14. In his view, material issues of fact exist as to Slade's breach of contract claim such that the trial court should have denied summary

---

[13] As noted herein, Slade only moved to quash the subpoena to the Archdiocese and did not oppose the subpoena to the School.

[14] It appears that Slade is referring to the grounds presented by the Department for a continuance and not the grounds identified in the Department's April 2018 letter. As for Slade's insinuation that the School improperly volunteered information to the Department, it was the Department's own 2012 audit that provided the reasons the School gave when it fired him. *See* Mot. for Summ. J., at Ex. 10 (School's termination letter).

judgment. *Id.* at 14, 19.

The School counters that its letter (1) recited the legal standard for reinstatement of a teaching certificate; (2) noted that public records "answer the question" about Slade's tenure; and (3) opposed Slade's petition for reinstatement. Sch.'s Br. at 20-21. On the merits, the School argues that the trial court correctly held the letter did not disparage Slade by referring the Commission to public records. *Id.* at 21-22. In the School's view, referring the Commission to public records "is not disparagement" and "did not damage" Slade's reputation. *Id.* (citation omitted).

Initially, the trial court's opinion did not cite or discuss any caselaw addressing why the School's letter did not violate the non-disparagement clause. The Superior Court, however, has addressed a similar issue in resolving whether the trial court correctly denied a petition to enforce a settlement agreement containing a non-disparagement clause. *Weiser v. Babik* (Pa. Super., No. 1351 MDA 2022, filed Oct. 6, 2023), 2023 WL 6534185.[15] In *Weiser*, the parties' agreement had defined "disparaging communication" as "a communication which is belittling, contemptuous, decrying, degrading, demeaning, denigrative, denigratory, deprecatory, depreciative, depreciatory, derisory, derogative, derogatory, detractive, disdainful, scornful, slighting, and/or uncomplimentary." *Id.* at *1 (citation modified).

The appellant claimed that the appellee violated the clause "by making deprecatory remarks about [the appellant] in a Facebook post and during a public meeting . . . ." *Id.* The parties were members of an association, and the appellant and another individual were running for the president of the association. *Id.* The appellee posted on Facebook implying that the appellant was corrupt, racist, and

---

[15] We may rely on non-precedential decisions of the Superior Court for their persuasive value. Pa.R.A.P. 126.

"abusing" the association's funds. *Id.* at \*1-2.[16] At the public meeting, in response to the appellant's remarks, the appellee replied: "'I am not going to go through these BS games of you doing whatever you are doing,' 'this is not fun anymore, I want you out of my life, to leave me alone,' and 'stop stalking me.'" *Id.* The trial court declined to enforce the settlement agreement, reasoning that the clause was ambiguous[17] and that appellee's remarks were not disparaging. *Id.* at \*3.

The Superior Court disagreed, holding that the contractual definition of "disparaging communication" was unambiguous as a matter of law. *Id.* at \*6. The Court then explained that the Facebook post "was demeaning because it implied that [the appellant] was corrupt, had stolen from [the association] in the past, and would steal again from [the association] if elected president in 2022." *Id.* The communication, per the Court, disparaged the appellant "implicitly or by innuendo." *Id.* The Court also held that the appellee's "stalking" comment was "clearly" disparaging. *Id.* at \*7. The Superior Court thus reversed the trial court's denial of

[16] The appellee's post follows: "As a previous board member recently resigned due to the corruption of past leadership ... I highly recommend the people push for an external audit of the financial state of the [association] ... We need to know where our money is and where it is spent. Past leadership has abused our money. Past leadership has claimed our money as their own. Let's unite together to ensure our money is ours, not a single person's. Let's take back the [association] like Shawn Vinson has been trying to do. Shawn will put us in the right direction. He is not corrupted. He will do what is right for the people. He will not steal from an association he stands for. Vinson is the only option. Vinson will bring us out of this. I (as an active constable) will not be victim of an association leadership being controlling and racist." *Weiser,* 2023 WL 6534185, at \*1 (ellipses in original and citation modified).

[17] The trial court had reasoned that "the broad definition of the term compels this court to find that the term is ambiguous. The all-encompassing term, 'disparaging,' could be constructed differently and understood in several ways depending on the context in which the statement is made. The agreement prohibits 'disparaging' communication 'about the other party.' Importantly, there is no suggestion in the Agreement as to whether general statements that do not specifically mention the other party could be construed as disparaging against the other party through inference, implication or innuendo." *Weiser,* 2023 WL 6534185, at \*3 (citation omitted). In its view, the definition contained "an element of intent" and the trial court discerned no "intent to belittle" the appellant. *Id.* (citation omitted).

the petition to enforce a settlement agreement. *Id.*

Instantly, under the non-disparagement clause, the School (1) cannot "make any disparaging, demeaning, or denigrating comments to any person or entity" "in writing," or (2) take any action that may damage Slade's "reputation or integrity." Am. Compl. at Ex. A (excluding any evidence or testimony ordered by an agency). "Disparage" is defined as "to speak slightingly about" someone, "demean" is "to lower in character, status, or reputation," and "denigrate" is "to attack the reputation of." *Disparage*, *Demean*, *Denigrate*, Merriam-Webster's Dictionary (last visited July 10, 2025).

Respectfully, in our view, the question of whether the School's letter disparaged, demeaned, or denigrated Slade is not so clear-cut as to grant summary judgment in the School's favor. *See generally Maas*, 234 A.3d at 436.[18] Initially, we recognize the procedural posture of this case differs from *Weiser*, which held, as a matter of law, that the remarks at issue violated the non-disparagement clause in resolving a motion to enforce the settlement agreement. *See Weiser*, 2023 WL 6534185, at *6-7.

Nevertheless, similar to the appellee's remarks in *Weiser*, viewed in the light most favorable to Slade, the School's written statement that only an applicant of good moral character should have a certificate and it "vehemently opposed" Slade's reinstatement, could be construed as disparagement "implicitly or by innuendo." *Cf. id.* A factfinder could find that the School implied that Slade lacks the good moral character, *cf. id.*, even if the School was accurately stating the law.

_____

[18] *But see Foster v. Watson* (W.D. Pa., No. 2:21-cv-958, filed Aug. 9, 2024), 2024 WL 3743067, at *6, 8 (citing *Weiser* in holding that as a matter of law, the statement at issue violated the non-disparagement clause). Regardless of whether the School's letter poses a question of law or fact as to whether it violated the non-disparagement clause, Slade cannot prevail on the issue of damages as set forth below.

11

*See* 24 P.S. § 12-1209(b). A factfinder could also find that the School's "vehemently opposed" statement, in context, could have denigrated Slade. *Cf. Weiser*, 2023 WL 6534185, at *6-7. Similar to the *Weiser* remarks that implied the recipient was corrupt, racist, and "abusing" funds, a factfinder could conclude that the School's letter similarly implied Slade's lack of good moral character. *Cf. id.* In conjunction with the letter's reference to "public records reflect what occurred" during Slade's tenure, a factfinder could conclude that the School implicitly disparaged, demeaned, or denigrated Slade. *Cf. id.* For these reasons, we respectfully disagree with the trial court's holding to the contrary.

## B. Damages

### 1. Background

Before summarizing the parties' damages arguments, we discuss the School's motion for summary judgment and Slade's answer in opposition. Generally, the School argued that Slade did not meet his burden of proving any damages from any breach of the non-disparagement clause. Further, the School asserted that Slade's evidence of damages was speculative. Mot. for Summ. J. ¶¶ 108-129.

Slade filed an answer that mostly denied the School's averments as conclusions "of law to which no response is required." *See, e.g.*, Answer to Mot. for Summ. J., 10/7/22, ¶¶ 109-113. Slade more specifically responded to some averments by, for example, opining that his "damages are not so speculative as to deny him any relief and [Slade] is entitled to equitable relief in the form of a permanent injunction ordering [the School] to refrain from violating the contractual terms of the agreement and contractual attorneys' fees and costs for the action to enforce the contract." *Id.* ¶ 108. He also asserted that he was "entitled to monetary damages for the loss of the

12

ability to pursue his chosen trade as freely as he could have absent the breach in the agreement as well as injunctive relief . . . ." *Id.* ¶ 114. Slade, however, denied that he "failed to establish any damages." *Id.* ¶ 116.[19]

In his brief opposing summary judgment, Slade argued that the School's letter "obviously damage[d]" his reputation and integrity. Br. in Supp. of Answer to Mot. for Summ. J., 10/7/22, at 5 (citing only the School's letter). He asserted that "it may be inferred that [his] reputation was harmed and future economic opportunity, although not completely foreclosed, was substantially limited by a foreclosure of an opportunity to have his teaching certificate." *Id.* at 8.

Slade construed the School's argument as asserting "a non-disparagement provision is unenforceable so long as there [is] not any specific, hard, economic harm," because it "completely defeats the public policy purpose of a non-disparagement agreement." *Id.* at 9. In Slade's view, he was "entitled to present testimony at trial for a factfinder regarding harm to his reputation" and that the court could "award equitable relief in the form of an order for [the School] to issue an official retraction of its statement to the Commission and an injunction prohibiting [the School] from disparaging [him] in the future." *Id.* Slade asserted that the "amount of damages is [a] genuine issue of material fact." *Id.* Slade did not cite or otherwise refer the trial court to any material issues of fact addressing damages. *See generally id.*

**2. Arguments**

On appeal, and regarding damages, Slade reiterates his arguments

---

[19] In response to the School's averment that Slade "admitted that the reason his employment with the Archdiocese ended had nothing to do with the fact that he didn't have a teaching certificate," Mot. for Summ. J. ¶ 124, Slade replied that the School's averment was a conclusion of law and he "further denied that this allows the drawing of an inference that there exist no damages." Answer to Mot. for Summ. J. ¶ 124.

below: his damages were not "too speculative" to preclude trial and he "was entitled to, at a minimum, equitable relief." Slade's Br. at 15. He maintains that a factfinder could infer that the School's letter damaged his reputation and "future economic opportunity." *Id.* at 16-17. Slade repeats he was entitled to "present testimony at trial . . . regarding harm to his reputation." *Id.* at 18. In his view, the trial court could have awarded damages for such harm and equitable relief in the form of an injunction prohibiting future disparagement. *Id.* Slade again maintains that the "amount of damages was a genuine issue of material fact." *Id.* at 19.[20]

The School counters that Slade's alleged damages are "so wildly speculative" that he cannot prove them with reasonable certainty. School's Br. at 22-28. The School argues that damages in a breach of contract action must be proved with reasonable certainty. *Id.* at 23. The School contends that Slade's claim for damages is grounded in speculation because he assumed that all of his job losses were caused by the Commission's denial. *Id.* at 26-27. The School notes that Slade himself testified he did not fight his certification revocation in 2015 because not having a certification did "not hinder him from working in the education field." *Id.* at 26 (citation modified). The School points out that Slade was both hired and fired from various positions for reasons completely unrelated to his teaching certification. *Id.* at 27-28.

### 3. Discussion

Pennsylvania Rule of Civil Procedure 1035.2 permits a defendant to move for summary judgment on the basis that the plaintiff "failed to produce

---

[20] With respect, this Court will not act as the parties' advocates and hunt for factual support in a record spanning almost a thousand pages. *Cf. Commonwealth v. J.G.M.* (Pa. Super., No. 1822 EDA 2016, filed Mar. 31, 2017), 2017 WL 1205091, at *12 (stating "it is not this Court's responsibility to comb through the record seeking the factual underpinnings of his claim"); *Wright v. Lower Salford Twp. Mun. Police Pension Fund* (Pa. Cmwlth., No. 103 C.D. 2019, filed Dec. 20, 2019), 2019 WL 6998675, at *5 n.6 (same).

14

evidence of facts essential to the cause of action," *e.g.*, damages. Pa.R.Civ.P. 1035.2(2). When "the record contains insufficient evidence of facts to make out a *prima facie* cause of action," the plaintiff "must come forth with evidence showing the existence of the facts essential to the cause of action . . . ." Pa.R.Civ.P. 1035.2 note; *Young v. Dep't of Transp.*, 744 A.2d 1276, 1277 (Pa. 2000).

The "adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying" at least one material issue of fact. Pa.R.Civ.P. 1035.3(a); *Phaff v. Gerner*, 303 A.2d 826, 829 (Pa. 1973).[21] "An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa.R.Civ.P. 1035.3(b). An adverse party opposing summary judgment cannot simply assert that damages exist: it must identify specific, essential evidence of damages that would, at the very least, establish a material issue of fact. *See id.*

Our Supreme Court addressed this requirement. *Dep't of Transp. v. Mitchell*, 535 A.2d 581, 585 (Pa. 1987) (plurality). In *Mitchell*, the Commonwealth sued for breach of contract and moved for summary judgment on damages. *Id.* at 584. The defendant filed a brief in opposition but submitted "no affidavits or other

---

[21] Rule of Civil Procedure 1035.3(a) follows:

(a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
    (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
    (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.Civ.P. 1035.3(a).

materials which contest the statement of damages made in the Commonwealth's motion." *Id.* at 586. The lead opinion held that absent "affidavits or other materials" contesting the Commonwealth's statement of damages, the defendant "may not defeat a motion for summary judgment merely by denying that the Commonwealth's statement of damages is accurate." *Id.* The Court reasoned that permitting the defendant to defeat the motion with mere denials would violate the rule that bars adverse parties from resting upon the denials in their pleadings. *Id.*

Instantly, as discussed above, Slade's response to the School's motion for summary judgment mirrors the *Mitchell* defendant's brief in opposition. Specifically, Slade's response consisted of denials and assertions that he was entitled to various forms of relief, but he did not cite or refer the trial court to any material issues of fact addressing damages. *See* Answer to Mot. for Summ. J., ¶¶ 108, 114, 116; Br. in Supp. of Answer to Mot. for Summ. J. at 5-9. Like the *Mitchell* defendant who filed only a brief without supporting materials, Slade failed to identify anything in the record disputing the fact of damages. *Cf. Mitchell*, 535 A.2d at 585-86. Under Rule 1035.3(a), Slade was required to identify at least one fact, or material issue of fact, regarding his damages. Pa.R.Civ.P. 1035.3(a)(1)-(2). His denial that he "failed to establish any damages" is equivalent to resting upon the pleadings, which our Supreme Court prohibits. *Cf. Mitchell*, 535 A.2d at 586. In sum, Slade was required to do more than rest on his denials—he had to, but failed to, identify any facts of record establishing damages. *See Young*, 744 A.2d at 1277; *Phaff*, 303 A.2d at 829.

Finally, to the extent that Slade seeks some sort of equitable relief or injunction based upon an alleged breach of contract, our Supreme Court recently noted as follows. A "party moving for an injunction based on a breach of contract still must carry its burden to show irreparable harm as a result of the breach." *CKHS,*

16

*Inc. v. Prospect Med. Holdings, Inc.*, 329 A.3d 1204, 1217 (Pa. 2025). Slade utterly failed to argue or identify any facts establishing irreparable harm before the trial court and this Court. *See generally* Slade's Br.; Br. in Supp. of Answer to Mot. for Summ. J.

## IV. CONCLUSION

For all these reasons, although we disagree with the trial court's holding that the School's letter could not constitute a violation of the non-disparagement clause, Slade simply fails to identify any facts or material issues of fact addressing his damages. As the School correctly points out, Slade continued to substitute teach without a certificate. We affirm the trial court's order granting the School's motion for summary judgment.

_____
**LORI A. DUMAS, Judge**

Judge Covey concurs in the result only.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Slade,  :
        Appellant  :
                            :   No. 350 C.D. 2023
        v.  :
                            :
The Laboratory Charter School  :

## **O R D E R**

AND NOW, this 10th day of July, 2025, we AFFIRM the November 9, 2022 order entered by the Court of Common Pleas of Philadelphia County, which granted the motion for summary judgment filed by The Laboratory Charter School.

 

 

**LORI A. DUMAS, Judge**